## IN THE COURT OF APPEALS OF IOWA

No. 16-1738
Filed December 21, 2016

**IN THE INTEREST OF A.I.,**
**Minor Child,**

**E.A., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Peter B. Newell, District Associate Judge.

A mother appeals from the juvenile court's order terminating her parental rights to her child. **AFFIRMED.**

Jane M. Wright, Forest City, for appellant.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee.

Crystal L. Ely of North Iowa Youth Law Center, Mason City, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals from the juvenile court's order terminating her parental rights to her child, A.I., born in 2005.[1]  She argues the State failed to prove the statutory grounds for termination by clear and convincing evidence and termination is not in the child's best interests.  She also asserts she shares a bond with the child that weighs against termination and the court should have granted her an additional six months to work toward reunification with her child.

In a related matter involving the mother's youngest child, C.O., we summarized the background facts of this case:

> The family became involved with the Iowa Department of Human Services (DHS) in April 2015, due to a founded child abuse assessment for lack of supervision after a drug task force raided the parents'[2] home and found marijuana and methamphetamine accessible to the children.[3]  [C.O.], along with [A.I. and another half-sibling], was removed from the home in June 2015 because of the parents' substance abuse, domestic violence, and mental health concerns.  [C.O.] was placed in family foster care with [A.I.].

*In re C.O.*, 2016 WL 4036249, at *1.

In September 2016, the juvenile court terminated the mother's parental rights to A.I. pursuant to Iowa Code section 232.116(1)(f) and (g) (2015).  We review termination-of-parental-rights proceedings de novo.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  "We are not bound by the juvenile court's findings

---

[1] The mother has six children.  In 2002, a guardianship was established for the mother's three oldest children, one of whom is now an adult, for placement with their maternal grandparents.  In 2003, the mother voluntarily terminated her parental rights to another child, who was later adopted by the foster parents of her youngest child, C.O., and A.I.  In March 2016, the juvenile court terminated the mother's parental rights to C.O., and we affirmed.  *See In re C.O.*, No. 16-0635, 2016 WL 4036249, at *5 (Iowa Ct. App. July 27, 2016).

[2] At the time, the mother was living with the biological father of C.O., whose parental rights to C.O. were also terminated.  The biological father of A.I. is deceased.

[3] Criminal charges stemming from the raid were subsequently dismissed.

of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). When a juvenile court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

In *In re C.O.*, we affirmed the termination of the mother's parental rights to C.O., reasoning:

> We recognize the mother has made limited progress. She attended and completed inpatient substance abuse treatment in July 2015 and also participated in mental health treatment off and on throughout the case, including attending some couples counseling with the father [of C.O.]. She has also maintained employment throughout the case. At one point, she was engaging in unsupervised visits with C.O. However, the mother relapsed and tested positive for methamphetamine as late as January and February 2016; she also admitted she had missed over half of her scheduled drug screenings. At the time of the termination hearing, the mother did not have stable housing and was living with her nineteen-year-old daughter after having nowhere else to go. Furthermore, the [mother and father of C.O.'s] relationship continued to be a concern throughout the case. Both parents acknowledged their relationship was unhealthy and they should not be together, although the father later denied that their relationship had involved domestic violence. The juvenile court noted the mother regularly lied to DHS about her relationship with the father, and, as recent as January 2016, the parents had engaged in a physical altercation followed by sexual contact. At the time of the termination hearing, both parents claimed they were no longer together; however, the record indicates neither parent had addressed the domestic-violence concerns that led to the child's removal and adjudication.

2016 WL 4036249, at *2.

At the time of the termination hearing for A.I., the mother had adequate housing, was employed, and was participating in substance-abuse treatment and counseling. However, caseworkers testified the mother continued to struggle with issues of substance abuse, domestic violence, instability, and mental health. Her history demonstrates a pattern of several months of progress followed by months of unstable living, drug usage, and unhealthy relationships. In April 2016, the mother relapsed again following termination of her parental rights to C.O. Additionally, although the mother maintained she was no longer in a relationship with the father of C.O., there were two incidents in which the father was at the mother's home less than two weeks before the termination hearing for A.I.—one of which involved domestic violence between them resulting in a no-contact order against C.O.'s father. Both the service provider and the DHS worker testified they were concerned the mother would not protect A.I. if C.O.'s father returned to the home.

A.I. is placed in family foster care with two of his biological half-siblings, including C.O., with whom he shares an especially strong bond. He is a healthy, well-adjusted, and loving child who is in need of permanency. The mother and A.I. clearly love each other very much and have a strong bond. A.I. has expressed concern about his mother and has made statements to service providers that he does not want his mother's parental rights terminated. However, the DHS worker testified the relationship between the mother and A.I. resembled more of a friendship than a parent-child relationship. The DHS worker also testified A.I. had stated he wanted to stay in the foster home with C.O. but would be sad for his mother.

Upon our de novo review, we agree with the juvenile court's conclusion the State proved the grounds for termination under Iowa Code section 232.116(1)(f) by clear and convincing evidence and termination is in the child's best interests. Furthermore, we agree with the juvenile court's determination the mother's bond with her child does not preclude termination, and given her history, we are not persuaded the need for removal would no longer exist at the end of an additional six months. Accordingly, we affirm the juvenile court's order without further opinion, pursuant to Iowa Court Rule 21.26(1)(a), (d), and (e).

**AFFIRMED.**